Gilmore, J.
The alternative writ of mandamus was awarded hy this court. Its statements, much abbreviated,, are substantially as follows: That the relator for many years prior to his removal had been connected with the fire department of Cleveland as chief engineer, to which position he had been annually appointed by the mayor; that he was acting as such chief engineer at the time the act of March 21,1874, was passed and went into effect; that in the reorganization of the fire department under this act in. May, 1874, he was recognized as chief of, the department, and continued to discharge the duties of the office faithfully, efficiently, and competently until the 23d of December, 1874, when he was, by resolution of the board, discharged for incompetency; that his discharge was without notice or trial, and was in violation of law, and in disregard of the rules and regulations of the department.
The respondent appears and resists the peremptory writ by answer, setting forth a number of reasons why it should not issue. In the view that we take of the case it becomes unnecessary to notice any but the second, which is, substantially, that the action of the board in removing the relator for incompetency, was the exorcise of a discretion vested in it by law, the correctness or incorrectness of which can not be inquired into in this proceeding.
There is an agreed statement of facts on file, from which it appears that the board of fire commissioners of the city of Cleveland was organized May 1, 1874, under the act of March 21, 1874, and that no organization had ever taken place under the act of April 29, 1873; that the relator’s- *28 last appointment was made April 1, 1878, for one year, and after the expiration of the term, he continued to hold as his own successor till he was removed December 23, 1874; that on the 14th of August, 1874, the board adopted rules and regulations for the government of the department, which were printed and published, and in which the relator was recognized and called chief of the department; that on the 23d day of December, 1874, said board discharged, the relator for incompetency, and on the 5th day of February, 1875, appointed John A. Bennett, chief engineer of the fire department, who qualified and is now discharging the duties of such chief; that on the 6th of November, 1874, while charges were pending before the board against bim, the relator appeared in person before the board and verbally requested an investigation into said charges—which investigation was. had, of which the relator had notice, but failed to appear, except to give his own testimony ; that incompetently, in terms, was not one of the written charges, on which the investigation took place; that his discharge followed as the result of the investigation.
The matter is submitted on the writ, answer, and agreed statement of facts.
The counsel for the relator relies on the act of March 21, 1874 (71 Ohio L. 38), and especially the fifth section of the .act, which reads as follows»: “ The said board shall have power to appoint a chief of fire department, who shall be the executive officer of the board, and have the active management of the depai-tment in service, and such number of assistants as they may deem necessary, whose term of office shall be during good behavior and until their successors are appointed and qualified. They shall also appoint such other officers and employes as may be necessary for the efficient management of the department, who shall hold their positions until removed by death, resignation, or for causes hereinafter mentioned. They shall fix the salaries and prescribe the duties of all officers and members of the department; and incompetency, inefficiency, permanent disability, insubordination, or violation of any of the rules *29 and regulations of the board, shall be deemed cause for suspension or dismissal; provided, however, that no change shall be made under this act in the present members of said fire department, except for causes herein stated. No officer or member shall be appointed or removed on account of his religious or political opinion, nor participate in the political campaigns or conventions of any political party whatever.”
Passing over the matters not affecting the main question, we come to the claim of the relator, which is that he was his own successor on the 1st of April, 1874, at which time the act containing section five above quoted was in force, and as it found him in office, he could not be deprived of it by the board, except for the causes therein set forth, and the cause or causes must have had their origin after the passage of the act in order to give the board jurisdiction to try and dismiss him.
Conceding that he was his own successor, and that this gave him all the rights that a reappointment would have conferred, and that the fifth section protected him from removal except for the causes specified; it by no means follows that the causes of removal must have had their origin after the passage of the act, in order to give the board jurisdiction to discharge him if found incompetent. Manifestly the principal object of section five was to secure permanence, stability, and efficiency in the fire department, by making the tenure of position or office depend principally on competency and-good behavior. This appears in every sentence of the section, especially in the proviso, which, saving to the board the power of removal for any of the causes specified in the section, at the same time designedly protects the department from the demoralizing effects of changes in its membership, on account of religious or political opinion, by positively prohibiting changes for either or both these causes. The proviso is not, therefore, a restriction upon the power of removal for any of the enumerated causes.
In order to ascertain the powers of the board to take jurisdiction, try, and discharge members for any of the *30 •causes named, reference must be had to the act of March 21, 1874, 'which created it.
The first section of the act provides: “ That the management and control of the fire department in cities of the first class having a population exceeding ninety thousand inhabitants shall be vested in a board of fire commissioners, etc.” The last clause of the second section provides: “ That they shall have power to make such rules and regulations for the government of the department ¡as may be found necessary, from time to time, which shall have the power and effect of ordinances when approved by the city council.” The agreed statement of facts shows that such a •code of rules and regulations had been adopted and approved, and that the board assumed to be exercising its powers in pursuance of these rules, in the trial and discharge of the relator for one of the causes named in the fifth section of the act. From these it is apparent that the board was clothed with the power, and possessed of the means of -obtaining jurisdiction to try and determine questions of this character.
The grounds upon which the relator, through his counsel, contends that the board had not jurisdiction to try the defendant are in substance: 1. That the written charges pending against him related to matters that occurred prior to the passage of the act of March 21,1874; 2. That there was no charge of incompetency pending against him, of which he had notice.
As to the first, it is sufficient to say that if the charges pending against him were true, he was morally unfit for the position he occupied, and that the statute neither renovated his character if it was impure, nor barred inquiry as to matters that occurred previous to its passage, in order to enable the board to determine the truth or falsity of the charges. The answer to the second is, that incompetency, in a legal sense, means a lack of fitness to discharge the duties of the position he held, and official delinquency or corruption if it existed, was a disqualification that rendered him incompe *31 ■tent for the position. If proof of the charges made, established this as a result, it was sufficient, without using the word incompetency in the charge. He appeared before the board and requested an investigation, and this was a waiver of notice in writing, and gave the board complete jurisdiction of the case in every respect.
Under these circumstances the board found the relator incompetent and discharged him.
The point most strongly urged by counsel for the respondents is, that the action of the board in this respect was the exercise of a discretion that can not be inquired into in this proceeding. We are all of opinion that this view of the case must be sustained.
The duties imposed by law upon the board are of the .gravest character. The department under its control is one of the most important to the welfare and safety of a great city. As has been shown, the legislature intended to make it permanent, stable, and efficient. It must be conclusively presumed that those controlling it, are best informed as to the qualifications of the members of the department, and what will best answer its purposes. The effect of interference with the appointment or removal of its officers would, almost necessarily, be in the highest degree pernicious, on account of the demoralizing effects that would follow. The dismissal of the relator was the result of the deliberate judgment of the board, after a full investigation of the charges preferred against him. The board was the only tribunal clothed with power to try the case, and its determination and judgment must be held to be final. The authorities cited by counsel for the board, fully sustain the proposition, that wherever a discretionary power is vested in a board, and it has exercised that discretion, this court ought not to interfere, because it can not control and ought not to coerce that discretion.
We therefore hold that the board is invested with discretionary power in the trial and removal of members of the department, and having, in the exercise of its discretion, *32 removed the relator, this court will not compel it by mandamus to restore him.

Peremptory writ refused and proceedings dismissed.

McIlvaine, C. J., Welch, White, and Rex, JJ., concurred.